**Teitelbaum Law Group, LLC**
*Attorneys for Plaintiff Steven Robles*
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670
Fax: (914) 437-7672
Email: jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>MICHAEL C. FINNEGAN, SR.<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 17-36469 (CGM) |
| STEVEN ROBLES,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL C. FINNEGAN, SR., CANDACE K. FINNEGAN, and FRANCIS O'REILLY, in his capacity as Escrow Agent,<br><br>　　　　　　　　　　Defendants. | Adv. Proc. No. _____ |

## COMPLAINT

Steven Robles (the "**Plaintiff**" or "**Robles**"), by his undersigned attorneys Teitelbaum Law Group, LLC, as and for his complaint against debtor/defendant Michael C. Finnegan, Sr. (the "**Debtor**") and defendant Candace K. Finnegan ("**C. Finnegan**") and Francis O'Reilly, in his capacity as Escrow Agent ("**Escrow Agent**" and together with the Debtor and C. Finnegan, the "**Defendants**"), respectfully represents as follows:

1

## NATURE OF THIS ACTION

1.      This adversary proceeding is brought pursuant to Rules 7001(1), (2) and (9) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and seeks an entry of an order and judgment of this Court declaring that (i) the Residential Contract of Sale dated March 2, 2017 between the Debtor and C. Finnegan, as Seller, and the Plaintiff, as Purchaser (the "**Contract**") pertaining to the purchase and sale of the premises at 19 Lawes Lane, Philipstown, New York (the "**Premises**") was duly terminated by the Plaintiff prior to the Petition Date; (ii) the Contract is not an executory contract; (iii) the estate has no legal or equitable interest in or to the $50,000.00 down payment paid by the Plaintiff on account of the Contract (the "**Deposit**") and that the Deposit (with any interest thereon) is to be released to Plaintiff; (iv) due to mutual mistake, the equitable remedy of rescission is appropriate and that the Deposit (with any interest thereon) is to be released to Plaintiff; (v) due to the Debtor's intentional, willful and/or fraudulently misrepresentations or concealment of material facts which induced Plaintiff to execute the Contract and deliver the Deposit, the equitable remedy of rescission is appropriate and that the Deposit (with any interest thereon) is to be released to Plaintiff; and (vi)  due to the Debtor's negligent misrepresentations or concealment of material facts which induced Plaintiff to execute the Contract and deliver the Deposit, the equitable remedy of rescission is appropriate and that the Deposit (with any interest thereon) is to be released to Plaintiff.

## INTRODUCTION AND PROCEDURAL BACKGROUND

1.      On August 30, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief (ECF #1) (the "**Petition**") under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**").

2.      Schedule G of the Petition identifies the Contract as an executory contract of the

Estate.

3. On November 7, 2017, Robles filed a Proof of Claim (Claim 5) in this case in the amount of $50,000, seeking the return of the Deposit.

## PARTIES

4. Roble is a resident of the state of New York with a residence at 80 Worall Avenue, First Floor, Poughkeepsie, New York 12603.

5. Upon information and belief, the Debtor and C. Finnegan are residents of the State of New York with a residence at 17 Lawes Lane, Garrison, New York 10524.

6. Upon information and belief, Francis O'Reilly is an attorney duly admitted to practice law in the state of New York and before this Court, with offices at 1961 Route 6, Carmel, New York 10512, is named herein in his capacity as the designated escrow agent (the "**Escrow Agent**") under the Contract and, upon information and belief, is in possession of the Deposit.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b) and 1334 and Rule 7001 of the Bankruptcy Rules.

8. Debtor has invoked the core jurisdiction of this Court to resolve the disposition of the Deposit under the Contract. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(B) (K), and (O).

9. Venue is proper in this district under 28 U.S.C. § 1409(a),

10. This Adversary Proceeding is brought pursuant to Rules 7001(1), (2) and (9) of the Bankruptcy Rules.

## FACTS

11.     Robles executed a contract for the purchase and sale of the Premises, consisting of a completed New York Bar Association form of Residential Contract of Sale (the "**Form Contract**"), a Rider to Contract of Sale with sections numbered 29-39 (the "**Seller's Rider**"), a Short Sale Addendum (the "**Short Sale Addendum**"), a Rider to Contract containing sections numbered 1-14 (the "**Purchaser's Rider**"), and a Schedule "A" property description (the "**Property Description**" and together with the Form Contract, Seller's Rider, Short Sale Addendum, and Purchaser's Rider, the "**Original Contract**"), on or about January 16, 2017.

12.     The purchase price as set forth in the Original Contract was $2,900,000.00.

13.     Upon information and belief, on or around February 28, 2017, the Original Contract, as executed by Robles, and the Deposit check in the sum of $50,000.00 payable to "Francis O'Reilly, as attorney," was delivered to the offices of Francis J. O'Reilly, Esq.

14.     Upon information and belief, on or around March 2, 2017, the Defendants countersigned the Original Contract.

15.     On or around March 28, 2017, the fully executed Original Contract was delivered to Steve Tomann, Esq., counsel to Robles, at which time said Original Contract became binding and effective pursuant to Paragraph 28(e) thereof. A copy of the fully executed Original Contract is attached hereto as **Exhibit "A"**.

16.     The Original Contract was enclosed with a cover letter dated March 28, 2017 from Frank J. Corigliano, Esq., associate attorney at the offices of Francis J. O'Reilly (the "**Transmittal Letter**"). A copy of the Transmittal Letter is attached hereto as **Exhibit "B"**. The Transmittal Letter stated, among other things:

> [t]his letter shall confirm that your client's check representing the contract deposit in the amount of $50,000.00 has been deposited into the escrow account of Francis J. O'Reilly,

4

Esq." ". . . due to the extended time of the negotiation of the Seller's rider and your due diligence regarding the same, I am expecting your client will need an extension of the mortgage contingency date.

17.     The Short Sale Addendum (the "**Short Sale Contingency**") to the Original Contract conditioned Plaintiff's obligations to purchase the Premises upon:

"Seller obtaining the approval of Seller's existing lenders for a 'short sale' of the premises" and further stated that "[i]n the event that Seller does not receive the lenders' approval within sixty (60) days from the date of this Contract, TIME BEING OF THE ESSENCE, Purchaser may terminate this Contract and Seller shall immediately thereafter return the contract deposit to Purchaser and there shall be no further rights or obligations between the parties."

18.     Pursuant to Paragraph 8 of the Original Contract, Plaintiff's obligation to purchase the Premises was additionally conditioned upon his securing a written mortgage loan commitment from an institutional lender.

19.     Paragraph 8 of the Original Contract (the "**Mortgage Contingency**") provided in pertinent part as follows:

> 8. **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see* **Notes on Mortgage Commitment Contingency Clause***.)*
> a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 30 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ 2,465,000.00 for a term of at least 20 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). *To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met*; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.
> (b) Purchaser shall (i) make prompt application to *one or, at Purchaser's election, more*

5

*than one Institutional Lender* for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) ***

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

E**mphasis added.**

20. Pursuant to Paragraph 14 of the Original Contract, Seller was obligated to convey the Premises free and clear of all encumbrances.

21. The original Commitment Date (the date upon which the Mortgage Contingency expired) under the Original Contract was on or around April 27, 2017.

22. The original deadline for satisfaction of the Short Sale Contingency under the Original Contract was May 1, 2017.

23. Upon information and belief, in response to Debtor's request for short sale approval, at some time in early May, 2017, JPMorgan Chase Bank, N.A. ("**Chase**"), the holder of the first

6

mortgage on the Premises, advised Debtor that it required certain revisions to be made to the Original Contract, including (i) the addition of an "As-Is Rider" which provided that, notwithstanding anything to the contrary contained in the Original Contract, Plaintiff acknowledged and agreed that he would accept the Premises in as-is condition at closing; and (ii) the addition of a "Contract Amendment" to the Original Contract providing that the Closing Date would be "30-45 days after approval of the short sale" and that "[i]f there is no lender approval of the short sale on or before August 12, 2017, then either party may cancel this contract of sale by giving 7 days written notice to the other of such cancellation. If the contract is cancelled under this provision, the Seller shall promptly refund the deposit to Purchaser and no party shall have any liability to the other."

24. Upon information and belief, the parties executed the As-is Rider and Contract Amendment on or around May 23, 2017. The Original Contract, as amended and revised, is hereinafter referred to as the "**Revised Contract**." A copy of the Revised Contract is attached hereto as **Exhibit "C"**.

25. By letter agreement dated May 26, 2017 and executed on or about May 31, 2017 (the "**Letter Agreement**"), the parties to the Original Contract, by their respective counsel, agreed to a retroactive extension of the Commitment Date to August 12, 2017. A copy of the Letter Agreement is attached as **Exhibit "D"**. The Revised Contract, as amended by the Letter Agreement, is hereinafter collectively referred to as the "**Contract**."

26. Pursuant to §8(b) of the Original Contract, Plaintiff was obligated to make a prompt application to only one Institutional Lender.

27. Plaintiff timely submitted a mortgage application to Chase for mortgage loan financing in compliance the terms of the Original Contract.

7

28. By letter dated May 3, 2017, Chase denied Plaintiff's application for a mortgage (the "**Denial Letter**"). A copy of the Denial Letter dated May 3, 2017 is attached hereto as **Exhibit "E"**.

29. Plaintiff never received a mortgage Commitment from Chase.

30. Plaintiff did not apply for a mortgage from any other lender.

31. Plaintiff never received any mortgage commitment with respect to the Premises.

32. By email dated July 20, 2017 (the "**July 20th Email**"), counsel for Debtor advised counsel for Plaintiff that Chase had provided a list of outstanding conditions to Short Sale Approval including amendment of the preliminary Closing Disclosure to reflect a target closing date of December 30, 2017 and the requirement that all judgments and liens affecting the Premises be satisfied in connection with any sale. A copy of the July 20th Email is attached hereto as **Exhibit "F"**.

33. The Closing Date requested by Chase to address the short sale was more than 45 days after the Short Sale Contingency deadline of August 12, 2017.

34. Plaintiff did not agree to a further extension of the Short Sale Contingency deadline or the Closing date.

35. Based upon a title report dated as of January 26, 2017, ordered by Robles, the Premises were encumbered by:

- First Mortgage to Chase in the original principal amount of $2,500,000.00
- Notice of pendency filed by Chase in connection with its first mortgage
- Judgment in favor of Clark Patterson Lee and Clark Patterson Engineers, etc. in the amount of $67,417.52
- Judgment in favor of Orange County Trust in the amount of $544,014.92

8

- Judgment in favor of Sterling National Bank in the amount of $58,099.03

- Judgment in favor of Ulster Savings Bank in the amount of $438,222.29

Attached hereto as **Exhibit "G"** is the title report prepared for Robles by RG Agency, bearing Title No. RGP-21266 (the "**Title Report**").

36. The aggregate encumbrances against the Premises disclosed as of the date of the Title Report was at least $3,607,752.

37. The Petition revealed some of the encumbrances affecting the Premises as follows:

- First Mortgage to Chase in the amount of $2,644,576.03

- Second Mortgage to Paul Guillaro in the amount of $185,000.00.

- Judgment in favor of Sterling National Bank in the amount of $66,545.29.

38. As the purchase price in the Original Contract was $2,900,000.00, without Chase's short sale approval and the consent of junior lien holders, Debtor could not deliver clear title free of encumbrances as required by Paragraph 14 of the Original Contract.

39. In addition, as of January 2017, the Debtor knew that the New York State Urban Development Corporation ("the "**UDC**") had (i) commenced an action in the Supreme Court, New York County, on a promissory note executed by the Debtor; and (ii) filed a motion for summary judgment seeking judgment in the amount of $823,233.24. A copy of the Summons and Complaint and Notice of Motion for Summary Judgment are attached hereto as **Exhibit "H"** and **I**, respectively.

40. Debtor answered the Complaint on September 8, 2016. A copy of the Answer is attached hereto as **Exhibit "J"**.

41. Debtor did not oppose the motion for summary judgment.

42. By Decision and order dated February 24, 2017, UDC was granted judgment in the amount of $836,233.34.

43. Judgment in the amount of $836,233.34 was entered in favor of the UDC in New York County on March 16, 2017 and docketed as a lien in Putnam County against the Premises on April 3, 2017. A copy of the UDC judgment is attached hereto as **Exhibit "K"**.

44. At no time prior to the filing of the Debtors Amended Schedules on September 29, 2017 (ECF Docket No. 16) did Debtor disclose to Plaintiff the existence of the UDC claim or lien.

45. The Debtor's Amended Schedule discloses that the amount of the UDC Judgment is $850,273.46

46. Debtor knew or should have known that it was impossible to satisfy the Short Sale Contingency.

47. Debtor has never obtained approval from Chase for a short sale.

48. Debtor has never obtained consent of any party with a lien against the Premises to sell the Premises free and clear of such lien or encumbrance.

49. Counsel for Plaintiff sent a certified letter dated July 28, 2017 to counsel for Debtor (the "**July 28th Letter**") which included the Chase Denial Letter and requested the return of the Deposit based upon, among other things, Plaintiff's right to terminate under the Mortgage Contingency provisions of the Contract. A copy of the July 28th Letter is attached hereto as **Exhibit "L"**.

50. By letter dated August 11, 2017, counsel for Debtor improperly and wrongfully alleged that Robles breached the Contract, and refused to return the Deposit (the "**August 11th Letter**", attached hereto as **Exhibit "M"**).

51. By letter dated August 15, 2017, counsel for Plaintiff provided notice of termination of the Contract based upon the failure of the Mortgage Contingency and the Short Sale Contingency and again demanded the return of the Deposit (the "**August 15 Letter**", attached hereto as **Exhibit "N"**).

52. Debtor has refused to return the Deposit.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment and Turnover

53. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "52" of this complaint with the same force and effect as if more fully set forth at length herein.

54. Plaintiff duly applied for a mortgage as required under the Contract.

55. Plaintiff's application for a mortgage was denied by Chase prior to August 12, 2017.

56. Plaintiff did not apply to any other lender for a mortgage.

57. Plaintiff did not receive a mortgage commitment with respect to the Premises from any lender.

58. Plaintiff notified Debtor of the denial of the mortgage application prior to August 12, 2017.

59. Debtor failed to secure the approval from Chase for a short sale on or before August 12, 2017.

60. Debtor failed to secure the consent of parties with liens or claims against the Premises to release such liens without receiving payment in full.

61. Pre-petition, Plaintiff timely exercised his rights under the Mortgage Contingency

11

section of the Contract

62. Pre-petition, Plaintiff duly demanded the return of the Deposit.

63. Debtor has breached the Contract by refusing to return the Deposit.

64. Plaintiff seeks a judgment and order declaring (i) that, excerpt for the continuing obligation to return the Deposit, the Contract was terminated pre-petition; (ii) the Contract is not an executory contract; and (iii) the estate has no legal or equitable interest in the Deposit.

65. Plaintiff seeks an order and judgment directing the Escrow Agent, to deliver the Deposit (plus any accrued interest thereon) to Plaintiff.

## SECOND CLAIM FOR RELIEF

### Rescission Based Upon Mutual Mistake of Material Fact

66. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "65" of this complaint with the same force and effect as if more fully set forth at length herein.

67. Assuming, *arguendo*, that the Court should determine that the Contract was not terminated pre-petition, the parties to the Contract mutually understood and agreed that the Debtor must convey the Premises free of all encumbrances.

68. As the Purchase Price was less that the total liens and encumbrances upon the Premises, the Parties mutually understood and agreed that the Debtor must obtain the consent of the lien holders to release their liens for less than payment in full.

69. The consent of the lien holders to a short sale was to be accomplished by August 12, 2017.

70. The parties to the Contract mutually believed that the Debtor could secure the consent of such lienholders by such date.

71. The parties to the Contract were mistaken.

72. Debtor could not accomplish the consent and cooperation of these lienholders.

73. The parties to the Contract were mutually mistaken that the Contract could be performed.

74. Performance of the Contract was impossible from the inception.

75. The Contract does not provide for a sale by the Debtor as a Debtor in bankruptcy or otherwise pursuant to the Bankruptcy Code.

76. Rescission of the Contract and the return of the Deposit with any accrued interest thereon is appropriate based upon the mutual mistake of the parties and the impossibility of performance of the Contract.

## THIRD CLAIM FOR RELIEF

### Rescission – Fraud / Willful Misrepresentation

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "76" of this complaint with the same force and effect as if more fully set forth at length herein.

78. Debtor had a duty to disclose the claims of UDC and the judgment obtained by UDC.

79. Debtor intentionally, willfully or fraudulently failed to disclose the magnitude of the liens and claims against the Premises.

80. Debtor intentionally, willfully or fraudulently failed to disclose that it was impossible for Debtor to close on the sale of the Premises pursuant to the terms of the Contract.

81. At the time Plaintiff executed the Contract, only Debtor knew and reasonably could have known of, among other claims, the claims by UDC and the UDC Judgment

13

82. Debtor intentionally and willfully withheld this information to induce Plaintiff to execute the Contract and deliver the Deposit.

83. Once in possession of the Deposit, Debtor wrongfully refused to return the Deposit.

84. The Contract does not provide for a sale by the Debtor as a Debtor in bankruptcy or otherwise pursuant to the Bankruptcy Code.

85. Debtor intentionally, willfully and/or fraudulently failed to disclose material facts which Debtor knew or should have known were material to Plaintiff's decision to execute the Contract.

86. Rescission of the Contract and the return of the Deposit with any accrued interest thereon is appropriate based upon the Debtor's intentional, willfull and/or fraudulent omissions of material facts.

**FOURTH CLAIM FOR RELIEF**

**Rescission Negligent Misrepresentation**

87. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "86" of this complaint with the same force and effect as if more fully set forth at length herein.

88. Debtor failed to disclose the magnitude of the liens and claims against the Premises.

89. Debtor failed to disclose that it was impossible for Debtor to close on the sale of the Premises pursuant to the terms of the Contract.

90. At the time Plaintiff executed the Contract, only Debtor knew and reasonably could have known of, among other claims, the claims by UDC and the UDC Judgment

14

91. Debtor withheld this information to induce Plaintiff to execute the Contract and deliver the Deposit.

92. Once in possession of the Deposit, Debtor wrongfully refused to return the Deposit.

93. The Contract does not provide for a sale by the Debtor as a Debtor in bankruptcy or otherwise pursuant to the Bankruptcy Code.

94. Debtor negligently failed to disclose material facts which Debtor knew or should have known were material to Plaintiff's decision to execute the Contract.

95. Rescission of the Contract and the return of the Deposit with any accrued interest thereon is appropriate based upon the Debtor's negligent omissions of material facts.

**WHEREFORE,** Plaintiff demands judgment against the Debtor and the Escrow Agent, as follows:

    i. declaring that the Contract pertaining to the purchase and sale of the Premises was duly terminated by the Plaintiff prior to the Petition Date;

    ii. declaring that the Contract is not an executory contract;

    iii. declaring that the estate has no legal or equitable interest in or to the Deposit;

    iv. ordering the Escrow Agent to deliver the Deposit (with any interest thereon) to Plaintiff

    v. determining that the equitable remedy of rescission of the Contract is appropriate based upon the mutual mistake of the parties and the impossibility of performance of the Contract and ordering that the Escrow Agent release the Deposit (with any interest thereon) to Plaintiff;

    vi. determining that the equitable remedy of rescission of the Contract is

       appropriate based upon the intentional, willful and/or fraudulent omissions of material fact by the Debtor which induced Plaintiff to execute the Contract and ordering that the Escrow Agent release the Deposit (with any interest thereon) to Plaintiff;

vii.   determining that the equitable remedy of rescission of the Contract is appropriate based upon negligent omissions of material fact by the Debtor which induced Plaintiff to execute the Contract and ordering that the Escrow Agent release the Deposit (with any interest thereon) to Plaintiff;

viii.  such other and further relief as the Court may deem appropriate.

Dated:  White Plains, New York
         January 5, 2018

                         **TEITELBAUM LAW GROUP, LLC**
                         *Attorneys for Steven Robles*

                         By:   /s/ Jay Teitelbaum
                              Jay Teitelbaum, Esq.
                              1 Barker Avenue, Third Floor
                              White Plains, NY 10601
                              Tel: (914) 437-7670
                              Fax: (914) 437-7672
                              jteitelbaum@tblawllp.com